UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LARRY JAMES TAYLOR,

      Plaintiff,

v.                                                    Case No. 3:18cv1722-MCR-HTC

OFFICER JONES and
OFFICER SWANSON,

      Defendants.

_____/

<u>REPORT AND RECOMMENDATION</u>

Plaintiff, Larry James Taylor ("Taylor"), a prisoner proceeding *pro se* and *in forma pauperis*, brought this action under 42 U.S.C. § 1983. The matter is before the Court on Defendants Officer Jerry D. Jones and Lieutenant Michael Swanson's Motion to Dismiss Plaintiff's Complaint (ECF Doc. 16).[1] The motion has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Having reviewed the motion and applicable law, the undersigned recommends the motion be granted and Taylor's claims be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to

---

[1] Taylor was given thirty (30) days to file a response to the motion to dismiss and failed to do so. *See* ECF Doc. 17.

exhaust administrative remedies and failure to state a claim upon which relief can be granted.

## I.  FACTUAL ALLEGATIONS[2]

Taylor alleges he was arrested on August 21, 2016, and transported to a hospital.  After he was released from the hospital, he was booked into the Okaloosa County Jail, where he was placed in medical holding for a swollen shoulder and bruised shoulder and knees.  ECF Doc. 1 at 5.  While in medical holding, Taylor was called for a legal visit.  When the visit ended, Taylor requested that Officer Jones escort him back to medical holding because his "abraiseon [*sic*] and hands were bleeding again.  Even [his] fingernails were bleeding."  ECF Doc. 1 at 5.

Officer Jones told Taylor to wait, which Taylor did until he "couldn't bear the pain," at which point Taylor "got [Officer Jones'] attention and asked again."  ECF Doc. 1 at 5.  Taylor does not state in the complaint what he did to get Officer Jones's attention.[3]  Taylor next alleges that Officer Jones "came into the cell and grabbed [Taylor] by the collar and told [Taylor he was] going to wait until [Officer Jones]

---

[2] The following facts are derived from Taylor's verified complaint and are accepted as true for purposes of the motion to dismiss.  *See Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[3] The undersigned notes that as part of their motion to dismiss, Defendants submitted a memorandum completed by Lieutenant Swanson after interviewing Taylor about the incident. According to the memorandum, Taylor "was trying to get Officer Jerry Jones's attention by banging on the glass portion of the ACR Legal Visit holding cell 1" and "became agitated and was more persistent in yelling and hitting the glass with his hand."  ECF Doc. 16-1 at 29.  However, the Court does not consider the memorandum other than as it is relevant to the failure to exhaust argument.

was ready." ECF Doc. 1 at 5. Taylor informed Officer Jones that his shoulder hurt badly and again requested to be returned to medical holding. When Officer Jones did not do as Taylor had requested, Taylor "hit the door asking to go to medical again." ECF Doc. 1 at 5.

After Taylor "hit the door," Officer Jones "grabbed [him] by [the] (left) swollen shoulder and dragged [him] by that arm to medical holding." ECF Doc. 1 at 5. Taylor claims he begged Officer Jones to grab him by his right arm and that it "hurt so bad [he] had tears in [his] eyes." ECF Doc. 1 at 5. Taylor alleges Officer Jones "knew it hurt and intentionally wanted to hurt [him] by dragging that arm (left)." ECF Doc. 1 at 5. When they arrived at medical holding, Taylor avers, Officer Jones threw him into the cell and picked him up with both hands by the collar and said he would "break [his] face in." ECF Doc. 1 at 5. Taylor was "very scared and didn't know what to do." ECF Doc. 1 at 5. Taylor does not allege Officer Jones took any additional action towards him after that statement was made.

Taylor says he "wrote" at least ten (10) grievances "soon after they released [him] from medical holding." ECF Doc. 1 at 6. After the alleged incident, Taylor spoke to Lieutenant Swanson, who indicated he would look into the matter and that Taylor would be allowed to speak to a captain about what happened. Taylor alleges he was never allowed to speak to a captain and Lieutenant Swanson later told him to "leave the situation alone or [he] would get in trouble." ECF Doc. 1 at 6.

Taylor's complaint identifies the following claims: (1) assault, verbal assault and battery against Officer Jones; (2) excessive force – "dragging me and jerking me up by collar" – against Officer Jones and (3) abuse of authority by Officer Jones and Lieutenant Swanson for "not helping him." ECF Doc. 1 at 7. As relief, Taylor seeks "medical help with [his] left shoulder and "justice." Based on a liberal reading of the complaint, the undersigned will treat Taylor's excessive force and abuse of authority claims as seeking to state a claim for violation of the Fourteenth Amendment.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim, the Court reads a *pro se* plaintiff's allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *See Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678). Thus, only well-

pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff.  *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992).

## III.    DEFENDANTS' MOTION TO DISMISS

Defendants have moved to dismiss Taylor's complaint on three (3) grounds. First, Defendants contend the complaint fails to meet the minimal pleading standards required by the Federal Rules of Civil Procedure.  Second, Defendants argue Taylor failed to exhaust his administrative remedies.  Third, Defendants argue they are immune from liability.  Defendants also seek dismissal of the state law claims for failure to comply with Florida's pre-suit requirements and, further, for failure to state a claim upon which relief can be granted.

### A. Failure to Comply with Pleading Standards

Defendants argue Taylor's complaint should be dismissed for failure to meet minimum pleading standards, as a result of which they contend they cannot meaningfully respond to Taylor's allegations.  Although the Federal Rules of Civil Procedure require a plaintiff to state his claims in "numbered paragraphs, each limited as far as practicable to a single set of circumstances," the undersigned is also cognizant that a *pro se* complaint is to be liberally construed.  *See* Fed. R. Civ. P. 10(a) and (b); *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("A document filed *pro se* is 'to be liberally

construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'")).

Although Taylor, in fact, failed to comply with the pleading standards, the undersigned finds that such failure does not prevent Defendants from meaningfully responding to the complaint. Indeed, Taylor's complaint contains a "short and plain statement of the claim," and any generalized or conclusory allegations contained therein go to whether Taylor has stated a cause of action, not whether he has failed to meet the pleading standards. Accordingly, the undersigned declines to recommend dismissal based on failure to comply with Fed. R. Civ. P. 8(a)(2).

### B. Exhaustion of Administrative Remedies

Defendants argue Taylor's complaint must be dismissed because Taylor failed to exhaust his administrative remedies. Specifically, Defendants argue Taylor failed to submit his grievances within seven (7) days of the alleged incident as required by the Department's policies and did not do so until more than one (1) month later.

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of all available administrative remedies is a mandatory pre-condition to suit. 28 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement applies to all inmate suits about prison life, whether the plaintiff seeks declaratory and injunctive relief, monetary damages or both. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth*, 532 U.S. at 734. Thus, a court must dismiss an action if satisfied the

plaintiff failed to properly exhaust his available administrative remedies prior to filing suit. *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

In support of their position, Defendants attach an Affidavit from Captain Patrick Hanratty of the Okaloosa County Department of Corrections ("Department"), an Inmate Grievance Policy and an Inmate Handbook. *See* ECF Docs. 16, 16-1. The Policy is "an official record of the County" and states that grievance forms "should be made available to inmates in the housing areas." ECF Doc. 16-1 at 9. The Policy and Handbook state that a grievance may be filed on a matter relating to individual staff and inmate actions, application of policies, rules and procedures and any other matter related to the conditions of care and supervision. ECF Doc. 16-1 at 9, 21. The Policy states that "inmates must file the complaint (grievance) within seven days of the alleged incident." According to Captain Hanratty, "[i]nmates within the County's Department of Corrections (Jail) have access to file a grievance through forms made available in the housing units." ECF Doc. 16-1 at 3. Additionally, the Inmate Handbook is also "made available." ECF Doc. 16-1 at 3.

Captain Hanratty states that Taylor was an inmate in the Okaloosa County Jail beginning on August 21, 2016. Between September 28, 2016, and October 16, 2016,

Taylor filed eleven (11) grievances pertaining to the incident in question.[4]  Captain Hanratty directed Lieutenant Swanson to review Taylor's allegations.  In connection with his investigation, Lieutenant Swanson spoke with both Taylor and Officer Jones.  Lieutenant Swanson reported his findings to Captain Hanratty, including that Taylor was housed in the medical unit between August 21 and 23 and filed his first grievance on September 26, more than a month after the alleged incident occurred.  Captain Hanratty reviewed Swanson's findings and determined Taylor's grievances were untimely.  As a result, no further action was taken.

Captain Hanratty explains in his Affidavit that the time frame within which grievances must be filed is significant because the Department does not retain video from inside the inmate housing areas for more than thirty (30) days unless alerted of an incident or there is other reason for requesting review of a video within that time frame.  Had Taylor's grievances been timely filed, Captain Hanratty asserts, video of the alleged incident could have been reviewed and preserved.  Defendants thus assert Taylor's complaint should be dismissed for failure to timely exhaust administrative remedies.

Although failure to exhaust administrative remedies is an affirmative defense, it may be decided on a motion to dismiss.  *See Bryant v. Rich*, 530 F.3d 1368, 1374-

---

[4] In Taylor's complaint, he states he filed ten (10) grievances.  This discrepancy is not material to the determination of this motion to dismiss.

75 (11th Cir. 2008). Additionally, because it is a matter of abatement, the court may resolve the matter by taking evidence and making factual findings. *See id.* at 1376. Deciding a motion to dismiss for failure to exhaust administrative remedies involves two (2) steps. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response. *Id.* If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also Bryant*, 530 F.3d at 1373-74. If the complaint is not subject to dismissal at the first step, the court proceeds to the second step, which requires the court "to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.*

Here, through Captain Hanratty's affidavit and the exhibits, Defendants have shown that Taylor did not timely file a grievance and therefore failed to follow the procedures necessary to exhaust his administrative remedies. Defendants have also shown that the Grievance Policy, form and Inmate Handbook were available to inmates during the time Taylor was at the Jail. *See e.g., Goebert v. Lee Cty.*, 510 F.3d 1312, 1322-23 (11th Cir. 2007) (available remedies under the PLRA are those

that an inmate knows about or can discover through a reasonable effort).  Since Taylor did not file a response to Defendants' motion, there are no factual conflicts for the Court to resolve.[5]  Accordingly, the undersigned finds that Defendants have met their burden of showing that the grievance procedures were available to Taylor and Taylor failed to file a timely grievance.

The Eleventh Circuit has made clear that an untimely filed grievance, including one that was rejected by officials as such, does not meet the PLRA's exhaustion requirement.  *See Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (quoting *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies")).[6]  Accordingly, the undersigned recommends Taylor's complaint be dismissed for failure to exhaust administrative remedies.

---

[5] Taylor states in his complaint that he filed grievances "soon" after being released from medical hold.  Since Taylor does not provide a specific time when he filed his first grievance, Defendants' assertion that Taylor did not file his first grievance until more than thirty (30) days after the alleged incident is also not inconsistent with Taylor's complaint.

[6] In reaching its holding the court looked to its sister circuits which had ruled similarly, including the Fifth, Third, Seventh and Tenth circuits.

### C.    Excessive Force

As an additional ground for dismissal, Taylor has also failed to state a claim upon which relief can be granted for excessive force.  Claims of excessive force by pretrial detainees, such as Taylor, are governed by the Fourteenth Amendment.  *See Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 952 (11th Cir. 2019).  As the Eleventh Circuit recently explained, "[t]hat pretrial detainees fall within the Fourteenth Amendment's ambit dates to the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)," in which "[t]he Court explained . . . that the 'proper inquiry' when 'evaluating the constitutionality of conditions or restrictions of pretrial detention' is 'whether those conditions amount to punishment of the detainee.'"  *Id.* (quoting *Bell*, 441 U.S. at 535).

"Although pretrial detainees' excessive-force claims have been analyzed under the Fourteenth Amendment since *Bell*, the constitutional inquiry—at least in this Circuit—has long resembled the one that governs prisoners' excessive-force claims under the Eighth Amendment."  *Id.*  However, in *Piazza,* the Eleventh Circuit made clear that, "unlike a prisoner bringing an Eighth Amendment excessive-force claim, a pretrial detainee raising a Fourteenth Amendment claim needn't prove an officer's subjective intent to harm but instead need show only that 'the force purposely or knowingly used against him was objectively unreasonable.'"  *Id.* (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).  "After *Kingsley*,

then, if force used against a pretrial detainee is more severe than is necessary to subdue him or otherwise achieve a permissible governmental objective, it constitutes 'punishment' and is therefore unconstitutional." *Id.* "Notably, inasmuch as it entails an inquiry into the objective reasonableness of the officers' actions, the Fourteenth Amendment standard has come to resemble the test that governs excessive-force claims brought by arrestees under the Fourth Amendment." *Id.* at 952-53.

### 1. Officer Jones

Based on Taylor's allegations, Officer Jones grabbed him by his injured shoulder and dragged him after Taylor "hit" the door and refused to sit and wait as Officer Jones had instructed. The facts alleged, even accepted as true, do not show that Officer Jones used more than a *de minimis* amount of force or that Officer Jones's conduct was "more severe than [was] necessary to subdue [Taylor]." *Id.* at 952.

To state a claim for excessive force under the Fourteenth Amendment, Taylor must allege that a requisite amount of force was used against him. *See Smith v. Vavoulis*, 373 F. App'x 965, 966 (11th Cir. 2010). That force must be more than a *de minimis* use of force. *Id.* To establish a requisite amount of force, a plaintiff must suffer from more than a *de minimis* injury. *See id.* Taylor, however, has not alleged Jones used more than *de minimis* force. *See, e.g.*, *Sutherland v. Allison*, 416 F. App'x 45, 46 (11th Cir. 2011) (per curiam) (finding *de minimis* force where officer grabbed

plaintiff's left arm near the shoulder and pitched him forward and another officer pulled plaintiff's right arm, which was severely injured in a prior incident, behind his back and toward his left arm).  Taylor has also not alleged he suffered more than *de minimis* injury (or any injury at all) resulting from Officer Jones's grabbing or dragging Taylor by his injured shoulder.  *See McCall v. Crosthwait*, 336 F. App'x 871 (11th Cir. 2009) (affirming judgment in favor of defendants on excessive force claim based on finding that amount of force used by officer was not more than *de minimis* where facts showed that officer pushed the plaintiff out of the elevator causing him to hit the steel cell door and fall against the plexiglass window and prisoner complained about pain to his shoulder and forearm).

Additionally, as the Eleventh Circuit has observed, "'legitimate interests'- including the need 'to preserve internal order and discipline' and 'maintain institutional security' - may at times require jail officers to use force." *Piazza*, 923 F.3d at 953 (quoting *Kingsley*, 135 S. Ct. at 2473).  Considering Officer Jones's conduct through the lens of a reasonable officer, the undersigned finds that Taylor's allegations are insufficient to show that Officer Jones used excessive force.  *See id.* The undersigned, thus, finds Taylor has failed to allege facts sufficient to sustain a Fourteenth Amendment excessive force claim.

Taylor has also failed to allege a constitutional violation arising out of Officer Jones's alleged threat to "break his face in."  Courts have held that verbal

harassment, abuse or taunting is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.  *See, e.g., Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (holding that plaintiff's allegations of verbal abuse and threats by prison officials did not state a constitutional claim because the defendants never carried out the threats and "verbal abuse alone is insufficient to state a constitutional claim"); *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (noting that verbal taunts, alone, are insufficient to state a constitutional violation).

### 2.    Lieutenant Swanson

Taylor does not allege that Lieutenant Swanson used excessive force (or any force at all, for that matter) against him.  To the extent Taylor seeks to hold Lieutenant Swanson liable for the acts of Officer Jones, his claim fails as a matter of law.  "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal marks and citation omitted); *see also Polk Cty. v. Dodson*, 454 U.S. 312 (1981); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).  A causal

connection can be shown (1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; (2) when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or (3) when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *See Douglas v. Yates,* 535 F.3d 1316, 1322 (11th Cir. 2008) (citing *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)).

Taylor has alleged no facts to support a claim of supervisory liability against Lieutenant Swanson. As stated above, there is no allegation Lieutenant Swanson participated in the alleged incident; no allegation of widespread abuse; no allegation of an improper custom or policy and no allegation Lieutenant Swanson directed Officer Jones's conduct. Thus, Taylor has failed to state a cause of action against Lieutenant Swanson for violating his Fourteenth Amendment rights. Similarly, to the extent Taylor attempts to assert a claim against Lieutenant Swanson for failure to intervene in Officer Jones's alleged excessive use of force, he has failed to do so because he has not alleged Swanson was aware of the alleged use of force at the time it occurred or was even present. To the contrary, Taylor states that Lieutenant Swanson contacted him after he filed a grievance. *See, e.g., Callwood v. Jones*, 727 F. App'x 552, 560 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 100, 202 L. Ed. 2d 28

(2018) ("An officer's duty to intervene is triggered when he sees a fellow officer use excessive force.").

Taylor's claim against Lieutenant Swanson is limited to "not helping and not addressing the situation with more seriousness." ECF Doc. 1 at 7. Taylor alleges that after he filed his grievance, he met with Lieutenant Swanson who said he would look into the matter. ECF Doc. 1 at 6. Taylor does not allege that Lieutenant Swanson failed to look into the matter or that Lieutenant Swanson had the authority to take any action. To the extent Taylor seeks to hold Lieutenant Swanson liable for the handling, or lack thereof, of his grievances, such claim also fails as a matter of law.

"An inmate has no constitutionally-protected liberty interest in access to prison grievance procedures." *Moore v. McLaughlin*, 569 F. App'x 656, 659 (11th Cir. 2014) (internal marks omitted). Moreover, mishandling or denying a grievance does not render a defendant liable for the conduct resulting in the grievance. *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Lomholt v. Holder,* 287 F.3d 683, 683 (8th Cir. 2002) (holding that defendants' denial of plaintiff's grievances did not state a substantive constitutional claim). Because Taylor had no constitutionally protected liberty interest in access to the jail's

grievance procedure, and Lieutenant Swanson cannot be held liable for Officer Jones's actions based on his handling of Taylor's grievances, Taylor has failed to state a claim against Lieutenant Swanson.

### D.    Immunity

Taylor does not state in his complaint whether he is suing Defendants in their official or individual capacities.  Regardless, to the extent Taylor sues Defendants in their official capacities and to the extent Taylor seeks monetary damages (which he has not specifically pled), his claims are barred.  Suits against individuals in their official capacities are treated as suits against the governmental entities they represent – whether the city, county or state.  *See, e.g., Ky. v. Graham*, 473 U.S. 159, 165-66, (1985); *Faulkner v. Monroe Cty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013).  "A county's liability under § 1983 may not be based on the doctrine of respondeat superior."  *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  "[A] county is liable only when the county's 'official policy'" causes a constitutional violation."  *Id.* (quoting *Monell*, 436 U.S. at 694).  "Thus, [Taylor] must identify a municipal policy or custom that caused [his] injury."  *Id.* (internal marks omitted).  Taylor's complaint contains no reference to a policy, custom or practice.  Taylor thus has failed to state a claim upon which relief can be granted against the Defendants in their official capacities.

To the extent Taylor is suing Defendants in their individual capacities and seeks monetary damages, such claims also fail under the doctrine of qualified immunity, which shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. *Hope v. Pelzer*, 536 U.S. 730 (2002); *Conn v. Gabbert*, 526 U.S. 286 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)); *Powell v. Ga. Dep't of Human Res.*, 114 F.3d 1074 (11th Cir. 1998). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability attaches only if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. *McElligott v. Foley*, 182 F.3d 1248, 1260 (11th Cir. 1999) (citing *United States v. Lanier*, 520 U.S. 259, 270 (1997)).

To benefit from qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff." *Id.* at 1194. There is no dispute here that Defendants were acting within the scope of their

discretionary authority when they allegedly committed the acts of which Taylor complains. Thus, the burden is on Taylor to show (1) a constitutional right has been violated on the facts alleged; and (2) the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). As set forth above, the undersigned finds Taylor has not pled facts establishing a violation of his Fourteenth Amendment rights. Taylor thus cannot meet his burden under the first prong of the qualified immunity analysis.

### E.    Relief Requested

Finally, Taylor is not entitled to the relief he requests. As stated above, Taylor seeks "medical help" and "justice." Read liberally, Taylor appears to seek affirmative injunctive relief and possibly a declaratory judgment. However, "to receive declaratory or injunctive relief, plaintiffs must establish there was a violation, there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (citing *Newman v. Ala.*, 683 F.2d 1312 (11th Cir. 1982)). Tayler has not alleged, much less established, any of the requirements for declaratory or injunctive relief. Again, he has not sufficiently pled a constitutional violation. He also has not alleged he faces a serious risk of continuing irreparable injury from any of the Defendants. And, he has not alleged absence of an adequate remedy at law.

## IV.   TAYLOR'S STATE LAW CLAIMS

The Court's jurisdiction over this case is based on a federal question – the alleged violation of Taylor's civil rights under 42 U.S.C. §1983.  In addition to that claim, Taylor has also alleged state-law claims for assault.  Finding that Taylor's federal claims should be dismissed, the undersigned recommends that the state claims also be dismissed without prejudice.  *See* 28 U.S.C. § 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.") (citations omitted).

Accordingly, it is respectfully RECOMMENDED:

1.  That Defendants Officer Jerry D. Jones and Lieutenant Michael Swanson's Motion to Dismiss Plaintiff's Complaint (ECF Doc. 16) be GRANTED.

2.  That this case be DISMISSED.

3.  That the clerk be directed to close the file.

At Pensacola, Florida, this 9th day of July, 2019.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.